CONNER, J.,
dissenting.
I respectfully dissent from the denial of the motion for rehearing, and upon consideration of the motion, I now conclude I can no longer concur with the majority opinion.
First, neither side in this case has contended on appeal that the doctrine of res ipsa loquitur applies to this case. Thus, the majority opinion affirms the trial court on a legal analysis that was not argued by the parties below or used by the trial court. Instead, the issue to be resolved by us on appeal is how the first and last sentences of section 766.102(3)(b), Florida Statutes (2011), apply to a set of facts.
The primary factual scenario that underlies the analysis in this case is that a 4.25 inch drainage tube, placed during surgery for temporary postoperative use, broke and remained inside of Mr. Doekswell’s abdomen when the rest of the tube was removed by a nurse. In determining the application of the first and last sentences of section 766.102(3)(b), it is important to recognize the universe of explanations as to how or why the drain tube broke: either (1) the surgeon did something wrong; (2) the nurse did something wrong; or (3) the tube was latently defective before it was placed inside the abdomen.
In understanding the application of the first and last sentences of section 766.102(3)(b), it is also important to recognize the overall structure of legal concepts set forth by the legislature in adopting section 766.102. Section 766.102 establishes the threshold requirements for filing a medical negligence suit and the eviden-tiary standards for proving the claim. Subsection (3)(b) provides:
*275 (b) The existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care-However, the discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination, or diagnostic procedures, shall be prima fa-cie evidence of negligence on the part of the health care provider.
§ 766.102(3)(b), Fla. Stat. (2011).
The first sentence of section 766.102(3)(b) codifies the principle that a medical injury does not create any inference or presumption of negligence by a health care provider. Id. That principle recognizes there are inherent risks in all medical procedures.[2] Thus, the first sentence provides, in essence, that a bad outcome (the condition was not successfully remediated or a new problem was created) is not proof of negligence by the medical provider. The last sentence of section 766.102(3)(b) provides an exception to the general rule established by the first sentence.[3] The last sentence provides, in essence, that if a medical procedure has the unintended result of leaving a foreign body in the patient’s body after the procedure is completed, that fact alone is prima facie evidence of negligence on the part of the health care provider.
In recognizing that the legislature codified an important exception relating to foreign bodies, our supreme court adopted Florida Standard Jury Instruction (Civil) 402.4c, which the appellant requested. The hospital opposed the instruction, arguing that because the Dockswells were contending the nurse affirmatively did something wrong to break the drainage tube, the instruction was not applicable. The hospital asserted, and the trial court agreed, that standard instruction 402.4c was only applicable to a theory of liability in which the claimant had no knowledge or proof of how or why the drainage tube broke. The trial court agreed with the hospital, after interpreting the word “discovery” as contemplating a situation in which the claimant had no knowledge or proof of how or why the drain broke. But if the legislature intended the statute to apply the way the trial court construed it, the legislature could have simply said that if an unintended foreign body remains after a medical procedure and the claimant cannot prove why or how. it happened, then the fact the foreign body remained is prima facie evidence of negligence by the medical provider.
I contend the notion of “discovery,” as used by the legislature, simply connotes that the foreign body remaining in the patient’s body was an unintended consequence of the medical procedure. According to Webster’s dictionary, “discovery” means “the act or process of discovering.” Merriam-Webster’s Seventh New Collegiate Dictionary (1969). To “discover” means “to obtain sight or knowledge of for the first time.” Id. According to Webster’s, a synonym for “discover” is “unearth,” which “implies bringing to light something forgotten or hidden.” Id.
I agree with the Dockswells that the last sentence of section 766.102(3)(b) codifies and expands “the Zeagler Rule” espoused in our case law during the 1930’s in Smith v. Zeagler, 116 Fla. 628, 157 So. 328 (1934). *276 In Zeagler, our supreme court said that “[t]he burden of showing due care is upon a surgeon who leaves a sponge inclosed [sic] in a wound after the performance of an operation.” Id. at 329. The court went on to hold that leaving a sponge inside the patient during the surgery process was negligence per se. Id. (“The authorities are legion to the effect that it is negligence per se for a surgeon to leave a sponge in an abdominal incision made in his patient in the course of his performance of a surgical operation upon such patient.”) (citations omitted).
Case law subsequently limited the application of Zeagler to surgeons and not nurses or hospitals. In Beaches Hospital v. Lee, 384 So.2d 234, 236 (Fla. 1st DCA 1980), the First District quoted the language in Zeagler discussing “the burden of showing due care” and referred to the language as “the Zeagler rule.” Immediately after the First District coined the phrase “the Zeagler rule,” the First District inserted footnote 4 in the opinion and stated:
That rule [referring to “the Zeagler rule”] applied to the case here since the operation was performed in January, 1976. On July 1,1976, Section 768.45(1), Florida Statutes (1977), [which subsequently became section 766.102(3)(b) ] became effective, and provides unlike Zeagler that the discovery of the presence of a sponge is only prima facie evidence of the health care provider’s negligence. Health care providers are defined in Section 768.50(2)(b) as hospitals, physicians, osteopaths, etc.
Id. at 238 n. 4. (emphasis added). After noting in the footnote that the new statute did not apply to the case, the court went on to say:
When a patient sues both a surgeon and a hospital or other health care provider for injuries resulting from the negligent abandonment of a sponge within an enclosed wound, we consider it would be inappropriate for a trial judge to grant a request for the Zeagler instruction since a jury could find that the hospital’s attendants were solely responsible for the patient’s injuries. We think, then, the instruction is applicable only to an action between a patient and a surgeon,[5] and has no materiality when another health care provider is involved.
Id. at 237. Importantly, in footnote 5 of the opinion, the First District stated:
Assuming the action commenced before the effective date of Section 768.45(1), otherwise the statute’s provisions control.
Id. at 238 n. 5. (emphasis added). Thus, the First District recognized, shortly after the enactment of section 768.45(1) (the predecessor to section 766.102(3)(b)), that the statute established prima facie evidence of negligence by a health care provider when an unintended foreign body remains, and “the Zeagler rule” was no longer limited to surgeons.
I contend the last sentence of section 766.102(3)(b) is a recognition by the legislature that the first sentence of the section places too onerous a burden on the claimant to show a breach of the standard of care, when the universe of explanations for why a foreign body remained includes doctor error, nurse error, and product defect.[4]
*277 The Dockswells put forth two theories as to why Mr. Dockswell had to undergo a delayed second surgery.[5] The first and primary theory argued was that the nurse breached the standard of care in removing the drainage tube. The second and less argued theory was that the nurse breached the standard of care by not noticing the drainage tube was four inches shorter than it should have been after being removed. Under the clear wording of the statute, if the Dockswells came into court and said, “We don’t know how or why the drainage tube broke off in Mr. Dockswell’s body,” the Dockswells would have been entitled to standard instruction 402.4c. I find nothing in the wording of the statute that precludes the entitlement to standard instruction 402.4c because the Dockswells said, “The nurse did something wrong.” If a set of facts entitles one to a legal determination that prima facie evidence of negligence is established, additional affirmative evidence of negligence does not erase the prima facie determination. The trial court’s view of the meaning of “discovery” as used in the last sentence of section 766.102(3)(b) imports words into the statute that are not there. Thus, I would reverse and remand for a new trial because the trial court failed to give an instruction to which the Dockswells were entitled.

. The most basic risk, among the many, is a misdiagnosis of the condition.

. The fact that the last sentence begins with "however” sets forth an exception to the principles announced immediately before.

. If, by the adoption of section 766.102(3)(b), the legislature intended to completely abolish the application of res ipsa loquitur in medical malpractice cases, it makes sense that the legislature concluded it places too onerous a burden on the claimant to show a breach of the standard of care when the universe of explanations for why a foreign body remained includes doctor error, nurse error, and product defect.

. In seeking damages, the Dockswells argued that Mr. Dockswell would not have endured four months of pain caused by the foreign body if the nurse had promptly recognized that four inches of the drain remained in his abdomen.